UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL TYRONE BULL,<br><br>               Petitioner,<br><br>v.<br><br>JEFFREY BEARD, Warden,<br><br>               Respondent. | CIVIL NO. 13-592-AJB (WVG)<br><br>REPORT AND RECOMMENDATION GRANTING MOTION TO DISMISS<br><br>(DOC NO. 8) |

## A.    __INTRODUCTION__

Emmanuel Tyrone Bull (hereinafter "Petitioner") is a California inmate serving a sentence of nineteen years to life imprisonment. On March 12, 2013, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254. On May 20, 2013, Respondent filed a Motion to Dismiss the Petition. On August 23, 2013, Petitioner filed "Objections Against Respondent's Dismissal Motion" which the Court construes as an Opposition to the Motion to Dismiss. ("Opposition").

On April 6, 2012, Petitioner was cited in a custodial counseling chronology for violating cell standards. (Pet. at 3.[1]) The citation stated Petitioner had a sheet

---

[1] Citations to the Petition refer to the page numbers assigned by the Court's ECF system.

fastened to his bunk which impeded visibility into his cell and presented a hazard to facility security. Id. at 51. Petitioner now appeals the citation after exhausting his administrative and state remedies. He claims the offense was fabricated, will be harmful to his hearing before the Board of Parole, and consequently that it should be expunged from his record. Id. at 19, 42. Specifically, Petitioner claims that: (1) he was deprived of his due process right to an impartial hearing by the denial to confront and cross-examine the reporting employee; and (2) he was subjected to cruel and unusual punishment by having his cell lights on 24 hours per day, 365 days per year, which caused him sleep deprivation and contributed to the temperature within his cell reaching 120 degrees. Id. at 16-17, 21, 24.

In opposition, Warden Gerald Janda[2] (hereinafter "Respondent") argues that Petitioner failed to invoke federal *habeas corpus* jurisdiction because he did not challenge the fact or duration of his confinement. (Mot. to Dismiss at 2.) Specifically, Respondent claims that: (1) the counseling chronology did not (and could not) result in a credit forfeiture; (2) the mere possibility the counseling chronology may influence the Board of Parole's discretionary decision is too attenuated a connection to invoke federal jurisdiction; and (3) a *habeas corpus* action is improper to challenge the conditions of confinement. Id. at 4-5. The Court, having reviewed the pleadings submitted by the parties in this matter, finds that Petitioner is not entitled to the relief requested and hereby RECOMMENDS that Respondent's Motion to Dismiss be GRANTED and Petitioner's Petition for Writ of Habeas Corpus be DISMISSED.

**B.    PROCEDURAL BACKGROUND**

On April 6, 2012, Reporting Officer Alvarez filed a California Department of Corrections ("CDC") Form 128-A, documenting Petitioner's violation of Inmate Cell

---

[2] Jeffrey Beard is the Secretary of the California Department of Corrections and Rehabilitation. The warden of Calipatria State Prison, where Petitioner is currently housed, is Gerald Janda. Therefore Mr. Janda is the proper respondent. (Mot. to. Dismiss at 1.)

Standards, 15 C.C.R. Section 3064 and Operational Procedure 4006.[3/] (Pet. at 51.) On April 13, 2012, Petitioner was notified of the CDC 128-A and a copy was placed into his C-File.[4/] Id. at 18. On April 16, 2012, Petitioner filed an appeal (log no. Cal-12-0848) pursuant to 15 C.C.R. Section 3084, disputing the CDC 128-A filed against him. Id. at 45. The appeal was classified as a Disciplinary Issue and was therefore reviewed pursuant to 15 C.C.R. Section 3312(b). The appeal response named Officer J. Ortega as the Reporting Officer. Id. at 50. It upheld the CDC 128-A because the record indicated the Officer "observed the violation." Id.

Petitioner appealed again, claiming that the CDC 128-A was fabricated and that it was Sergeant Valdez who counseled Petitioner on removing the clothes rather than Officer Ortega. (Pet. at 49.) On June 6, 2012, Correctional Counselor II P. Alaniz, a second level reviewer, interviewed Petitioner regarding his complaint and verified its authenticity. Id. at 20. On June 8, 2012, the appeal was denied, exhausting all administrative remedies available with the California Department of Corrections and Rehabilitation ("CDCR"). Id. at 50. Petitioner attempted to appeal the second level decision. On July 18, 2012, the CDCR Office of Appeals, acting as the third level of review, responded by advising Petitioner the appeal issue was considered exhausted at the second level of review. Id. at 44. The second level of review decision was considered the department's final action regarding the CDC 128-A. Id.

Petitioner filed a Petition for Writ of Habeas Corpus in the California Superior Court. (Pet. at 8.) On October 25, 2012, the Petition was denied. Petitioner filed a Petition for Writ of Habeas Corpus in the California Court of Appeal. On December 19, 2012, the Petition was denied. Id. at 9. Petitioner filed a Petition for Writ of Habeas Corpus with the California Supreme Court, which was denied on February 13, 2013.

---

[3/] There is a discrepancy in the record presented to the Court. Petitioner claims Officer Valdez observed the violation and should have been the reporting Officer. In contrast, the CDC 128-A states the Reporting Officer was Alvarez, and the appeal lists Officer J. Ortega as the Reporting Officer.

[4/] C-File means "Central File" or, a "master file maintained by the department containing records regarding each person committed to its jurisdiction." 15 C.C.R. § 3000.

13CV592

After Petitioner exhausted all of his state court remedies, on March 12, 2013, Petitioner filed the Petition for Writ of Habeas Corpus that is now pending in this Court. On May 20, 2013, Respondent filed a Motion to Dismiss the Petition. Petitioner did not file an Opposition to the Motion to Dismiss.

## C. **FACTUAL BACKGROUND**

Petitioner is incarcerated at the Calipatria State Prison. On April 6, 2012, Officer Alvarez cited Petitioner in a custodial counseling chronology for violating inmate cell standards. (Pet. at 3.) Reporting Officer Alvarez filed a CDC Form 128-A, documenting a violation of Inmate Cell Standards, 15 C.C.R. Section 3064 and Operational Procedure 4006.[5] In the CDC 128-A, Officer Alvarez stated that a curtain, made from a State issued sheet, was hanging from Petitioner's bunk obstructing visibility (into Petitioner's cell). Id. at 51. Officer Alvarez instructed Petitioner to take the sheet down, also noting that he had verbally counseled Petitioner regarding the aforementioned cell standards on several occasions with negative results.[6] Id.

Petitioner disputes these factual citations alleging they are fabricated. Specifically, Petitioner alleges that there was no "curtain" hanging, instead he claims there were clothes drying on the foot of his bunk. (Pet. at 16.) Further, that Officer Alvarez never counseled him regarding cell standards prior to April 6, 2012. Id. at 19. Petitioner claims that this fabrication is evidenced by the omitted dates in the CDC 128-A on which the previous counseling had allegedly taken place.[7] Id. Finally, Petitioner

---

[5] When "minor misconduct recurs after verbal counseling," as allegedly happened here "a description of the misconduct and counseling provided shall be documented on a CDC Form 128-A, Custodial Counseling Chrono." 15 C.C.R., § 3312(a)(2). A CDC 128-A serves as the second stage of the Department's disciplinary process. (Pet. at 51.).

[6] "Inmates must keep their quarters and surroundings neat, clean and sanitary. Inmates may not alter their quarters or equipment without specific authorization to do so." 15 C.C.R. 3064.

[7] Petitioner claims that he only had one conversation with Officer Alvarez and it was around 10:40 am on April 6, 2012, where Officer Alvarez notified Petitioner that Sergeant Valdez was writing him up. Petitioner also claims that Officer Alvarez explained he was not worried about the clothes hanging and just to take it down before Sergeant Valdez came around in the mornings. (Pet.

claims the only relevant counseling he received regarding cell standards was by Sergeant Valdez on April 6, 2012, around 7:00 am. Id. at 16. Allegedly, Sergeant Valdez approached Petitioner's cell and told Petitioner to remove the personal clothing he had hanging from his bunk. Petitioner explained that he was unable to send his clothes to the laundry for cleaning or drying. Id. at 17. An exchange ensued where Petitioner accused Sergeant Valdez of violating 15 C.C.R. Sections 3060 and 3061.[8] The encounter ended with Petitioner complying by removing the clothing and Sergeant Valdez notifying Petitioner he would be cited. Id. Officer Alvarez then filed a CDC 128-A.

Petitioner appealed the CDC 128-A claiming the offense was fabricated. The appeal report named Officer J. Ortega as the Reporting Officer instead of Officer Alvarez. (Pet. at 49-50.) Petitioner points to this inconsistency as further proof the CDC 128-A was fabricated. Petitioner did not lose custody credits as a result of the CDC 128-A.[9] Id. at 3.

### D. **APPLICABLE LAW**

28 U.S.C. Section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in *custody* pursuant to the judgment of a State court only on the ground that he is in *custody* in *violation of the Constitution or laws or treaties of the United States*. 28 U.S.C. § 2254(a) (emphasis added).

at 17, 19.).

[8] "Means. Institutions will provide the means for all inmates to keep themselves and their living quarters clean and to practice good health habits." 15 C.C.R. § 3060. "Personal Hygiene. Inmates must keep themselves clean, and practice those healthy habits essential to the maintenance of physical and mental well-being." 15 C.C.R. § 3061.

[9] Custody credits may be earned, or forfeited, impacting the eligibility for a reduction in an inmate's term of imprisonment. 15 C.C.R. § 3042, Cal. Pen. Code § 2933.

Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison, must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); <u>Granberry v. Greer</u>, 481 U.S. 129, 133–34, 107 S. Ct. 1671 (1987). A writ of habeas corpus is the exclusive federal remedy for a state prisoner to attack the fact or duration of his confinement where he is seeking speedier release. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554, 94 S. Ct. 2963 (1974), <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 494, 500, 93 S. Ct. 1827 (1973). Further, <u>Preiser</u> left open the possibility of asserting a conditions of confinement claim in a *habeas* application where "a prisoner is put under additional and unconstitutional restraints." <u>Preiser</u>, 411 U.S. at 499.

Rule 4 of the Rules Governing Section 2254 cases provides for summary dismissal of a *habeas* petition "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . ." Rule 4, 28 U.S.C. foll. § 2254. Judges may authorize a respondent's dismissal to "avoid burdening the respondent with the necessity of filing an answer on the substantive merits of the petition." <u>Id</u>; <u>Lonchar v. Thomas</u>, 517 U.S. 314, 323, 116 S. Ct. 1293 (1996).

## E. **DISCUSSION**

Petitioner argues that the CDC 128-A should be expunged from his record because the citation will be harmful to him when he appears before the Board of Parole. (Pet. at 19, 42.) In support of this claim, Petitioner alleges that: (1) he was denied the right to confront and cross-examine the reporting employee; (2) the violation was fabricated; (3) there was insufficient evidence to support the CDC 128-A; and (4) he was subjected to cruel and unusual punishment by having his cell lights on twenty-four hours per day, 365 days per year, which contributed to the temperature in his cell reaching 120 degrees. <u>Id</u>. at 16-17, 21, 24. Federal "*[h]abeas corpus* jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding

from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) [citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

Respondent moves to dismiss, arguing that Petitioner failed to invoke federal *habeas corpus* jurisdiction. Specifically, Respondent argues that Petitioner did not challenge the actual fact or length of his confinement because: (1) the CDC 128-A did not result in a credit forfeiture; (2) the potential impact of the CDC 128-A on the Parole Board's decision is too tenuous a connection to merit federal jurisdiction; and (3) a *habeas corpus* action is improper to challenge the conditions of confinement. (Mot. to Dismiss at 4-5.) Federal *habeas corpus* relief is unavailable where the Petitioner has failed to challenge the fact, or length, of actual confinement. Nelson v. Campbell, 541 U.S. 637, 643, 124 S. Ct. 2117 (2004).

### 1. **A CDC 128-A Does Not Impact the Length of Confinement**

The fact or length of Petitioner's confinement is unaffected by the CDC 128-A because an inmate is not subject to credit forfeiture in connection with a counseling chronology. Good behavior credit is forfeited "as the result of disciplinary action" of a serious rule violation pursuant to 15 C.C.R. Sections 3323 and 3315. 15 C.C.R. § 3043(a). "A finding of guilty of a serious rule violation" will result in a credit forfeiture. 15 C.C.R. § 3323(a). Section 3315 defines "serious rule violations" and requires such violations to be reported on CDC form 115. 15 C.C.R. § 3315(a). In contrast here, Petitioner was cited for a minor disciplinary infraction which was reported on a CDC form 128-A. Consequently, the Petitioner was not subject to credit forfeiture. Furthermore, Petitioner did not actually lose custody credits as a result of the CDC 128-A. (Pet. at 3.) Therefore, the fact and length of Petitioner's confinement remains unchanged regardless of whether the CDC 128-A is expunged, or remains in Petitioner's C-File.

**2. The Potential Impact of a CDC 128-A on the Parole Board's Future Decision Does Not Invoke Federal _Habeas Corpus_ Jurisdiction**

In the Petition, Petitioner argues that the CDC 128-A is harmful to him because he will be appearing before the Board of Parole for a parole consideration hearing. The mere chance that Petitioner's CDC 128-A may alter the Parole Board's discretionary decision regarding the Petitioner's length of confinement is too attenuated to invoke federal jurisdiction. In Sandin v. Conner, 515 U.S. 472, 487, 515 S. Ct. 472 (1995), the United States Supreme Court reasoned that since there was no requirement that the parole board grant or deny parole based on recorded misbehavior, "the chance that a finding of misconduct will alter the balance [of parole board's decision] is simply too attenuated to invoke the . . . Due Process Clause." Sandin, at 487. In a similar context, the United States Supreme Court considered "whether the practice of presuming collateral consequences should be extended to challenges of parole termination." Spencer v. Kemna, 523 U.S. 1, 8, 12-13, 118 S. Ct. 978 (1998). In Spencer, the United States Supreme Court declined to extend the presumption of hypothetical (collateral) consequences to the area of parole revocation in part because the violation was "simply one factor, among many, that may be considered by the parole authority" and that it was not enough that the violation _may_ impact the defendant's parole in the future. Id. at 11, 13 (emphasis added). See Lane v. Williams, 455 U.S. 624, 633, n. 13, 639-40, 102 S. Ct. 1322 (1982). In Wilson v. Terhune, 319 F.3d 477, 481 (9th Cir. 2003), the Ninth Circuit declined to apply the presumption of collateral consequences to prison disciplinary proceedings.

Similarly here, the CDC 128-A is just one factor that the Parole Board may consider when deciding Petitioner's eligibility for parole. "_All_ relevant . . . information available . . . shall be considered in determining suitability for parole. . . including behavior before, during and after the crime. 15 C.C.R. § 2204(b) (emphasis added). 15 C.C.R. Section 2204(c)(6) states that "[i]nstitutional [b]ehavior" is a circumstance considered that tends to show unsuitability for parole, but only where the "prisoner had engaged in _serious misconduct_ in prison." (emphasis added). Here, Petitioner was cited

for a minor disciplinary infraction. Thus, since Petitioner's citation did not involve serious misconduct, there is only a remote possibility of impact on his parole eligibility. Any impact the CDC 128-A may have on the Parole Board's discretionary decision is too speculative a consequence to determine that it will alter the Petitioner's length of confinement for federal jurisdiction purposes.

A federal *habeas corpus* action is improper where a disciplinary proceeding may not ultimately alter the inmate's duration of confinement. In Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003), the Ninth Circuit Court reasoned that because expungement of a disciplinary sentence would not necessarily accelerate the defendant's parole and thus impact the length of a petitioner's confinement, the challenge to the disciplinary hearing is properly brought under 42 U.S.C. Section 1983. Ramirez, 334 F.3d at 859. Since a Section 1983 action is the proper means by which to challenge a disciplinary proceeding that would not necessarily shorten an inmate's sentence, a federal *habeas corpus* action is therefore an improper vehicle for Petitioner to seek relief. Thus, federal jurisdiction was not properly invoked in this case.[10]

In Petitioner's Opposition, Petitioner argues that at his January 17, 2013 parole hearing before the Board of Parole Hearings, the CDC 128-A was used to deny him parole. However, Petitioner's assertion is not entirely accurate.

On January 17, 2013, Petitioner appeared before a Panel of the Board of Parole Hearings ("BPH") for a Parole Consideration Hearing. At the hearing, the BPH denied Petitioner parole, stating *inter alia*,

(1) Petitioner was denied parole because he poses a present risk of danger to society and a threat to public safety if he is released from prison. He committed the commitment offense in a disturbing manner. His actions result in the death of another

---

[10] Petitioner also cites case law stating that a due process violation occurs when a prisoner is punished for conduct not proscribed by rules or policy. (Pet. at 36.)  As shown in Section A.1. above, since the Petitioner's duration of confinement was not impacted by the CDC 128-A, this argument also fails to invoke federal *habeas corpus* jurisdiction.

13CV592

person. The reason for committing the offense was anger, which, is in no way justified his actions. Additionally, Petitioner has a past record of violence prior to the commitment offense. [Petitioner's Opposition, Exh. B, Transcript of BPH Hearing, January 17, 2013, ("Exh. B") at 91].

(2) Petitioner has committed serious misconduct while in prison. He received a total of 28 CDC 115's, the most recent in 2012. He received a total of 38 CDC 128-A's[11], the most recent in 2008. Petitioner still has difficulty adhering to rules established by the prison. The BPH Panel noted that Petitioner's misconduct in prison will parallel his conduct outside of prison, if he is granted parole. (Exh. B at 92).

(3) Petitioner is prone to poor decision making and peer pressure. He lacks insight into his past and present pro-criminal thoughts and reasoning. His past and present pro-criminal thoughts and reasoning lead to all of his criminal behavior, multiple acts of violence, and involvement in numerous rules violations in prison. (Exh. B at 92-93).

(4) Petitioner has superficial explanations for his involvement in the commitment offense and for the numerous rules violations in prison. (Exh. B at 93).

(5) When Petitioner discussed with the BPH Panel the rules violations in prison, he attributed the rules violations to staff arbitrary decisions and actions rather than his own flawed decision making process. (Exh. B at 94).

(6) Petitioner clearly lacks the decision making skills necessary to resolve conflict without violence. (Exh. B at 95-96).

Here, it is evident that the BPH Panel considered all relevant information pertaining to Petitioner that was available at the time of the Parole Consideration Hearing. While, the BPH panel generally mentioned the CDC 128-A at issue in this case, it noted that Petitioner had committed serious misconduct while he was in prison for which he was cited with numerous serious rules violations reports. The Panel

---

[11] CDC 115's and CDC 128-A's are Rules Violation Reports.

attributed Petitioner's misconduct to his poor decision making abilities necessary to resolve conflict without violence. Further, the BPH Panel noted Petitioner's lack of insight in to his commitment offense and the numerous rules violation reports he had received in prison. Therefore, the Court finds that the CDC 128-A at issue in this case was not a significant factor used by the BPH Panel in denying Petitioner parole.[12]

### 3. Petitioner Was Not Deprived of His Due Process Rights Regarding His Hearing

Petitioner claims he was deprived of his due process right to an impartial hearing by the denial to confront and cross-examine the reporting employee. "Because of the special concerns of institutional safety . . . traditional due process rights such as the right to confront and cross-examine adverse witnesses and the right to counsel, are not mandated." Ivy v. Moore, 31 F.3d 634, 636, n. 1 (8th Cir. 1994) [citing Wolff v. McDonnell, 418 U.S. 539, 567, 94 S. Ct. 2963 (1974)]. "Confrontation and cross-examination present greater hazards to institutional interests. . . [these interests] are not rights universally applicable to all hearings." Wolff 418 U.S. at 567. Here, Petitioner does not show that he even requested testimony of the reporting officer, let alone that Petitioner was refused such a request. Even if Petitioner was denied such a request, inmates do not have a due process right to confront and cross-examine adverse witnesses. Therefore, denying Petitioner the right to confront and cross examine the reporting officer does not constitute a due process violation.

### 4. Petitioner's Cruel and Unusual Punishment Claim Is Insufficient To Invoke Federal *Habeas Corpus* Jurisdiction

Petitioner claims that he suffered cruel and unusual punishment in violation of the Eighth Amendment of the United States by the lights in his cell being kept on 24 hours per day, 365 days per year, which caused him sleep deprivation and contributed

---

[12]Consequently, Petitioner's request for a new parole suitability hearing, based on the BPH's use of the CDC 128-A in this case, is DENIED.

to the temperature in his cell reaching 120 degrees.[13/] (Pet. at 17, 40.) <u>See</u> U.S. Const. amend VIII, cl. 3. "The Eighth Amendment, applicable to the states through the Fourteenth, establishes limits on the conditions that states may impose on prisoners." <u>Baumann v. Arizona Dep't of Corrections</u>, 754 F.2d 841, 846 (9th Cir. 1985) [citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-45, 1015 S. Ct. 2392 (1981)]. "(C)onstiutional claims that merely challenge the conditions of a prisoner's confinement . . . fall outside of that [*habeas corpus*] core and may be brought pursuant to" a Section 1983 action. <u>Campbell</u>, 541 U.S. at 643; <u>See</u> <u>Badea v. Cox</u> 931 F.2d 573, 574 (9th Cir. 1991) (quoting <u>Preiser</u>, 411 U.S. at 489-99) ("A civil rights action, in contrast, is the proper method of challenging 'conditions of . . . confinement.'").

Here, Petitioner's contentions that his cell lights were kept on 24 hours per day, and that his cell reached a temperature of 120 degrees, are challenges to the conditions of his confinement. Neither the lights being kept on, nor the temperature in his cell  has any impact on the fact or length of his confinement. Therefore, the Petitioner has failed to invoke federal *habeas corpus* jurisdiction as to his Eighth Amendment claim.

Even if the Petitioner had properly invoked *habeas corpus* jurisdiction whereby he could argue he was subjected to cruel and unusual punishment, his claims are not sufficiently grave to form the basis of such a violation. The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures to guarantee the safety of inmates. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994). It is true that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." <u>Chappell v. Mandeville</u>, 706 F.3d 1052, 1061 (9th Cir. 2013) [quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304, 111 S. Ct. 2321 (1991)]. But "only those

---

[13/] Petitioner does not actually claim that the lighting contributed to the temperature in his cell. However, such an inference can be drawn by the proximity in which the arguments are made throughout the Petition.

deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Wilson</u>, 501 U.S. at 298. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981).

A prison official violates the Eighth Amendment only when two requirements are met: (1) the alleged deprivation is, in objective terms "sufficiently serious;" and (2) the official knew of, and deliberately disregarded "an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 834, 837. "Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." <u>Wills v. Terhune</u>, 2006 WL 335455, at *7 (E.D. Cal. Feb. 10, 2006).

### a. <u>Lighting</u>

Petitioner claims that the lights in his cell were kept on "24 hours a day, 365 days a year." (Pet. at 17, 24)[14]. Further, that he "can't sleep with the lights on 24 hours a day." <u>Id</u>. "Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090 (9th Cir. 1996) (quoting <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 782 (9th Cir. 1985)). Moreover, "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination." <u>Keenan</u>, 83 F.3d at 1090. In <u>Keenan</u>, the inmate alleged that "large fluorescent lights directly in front of

---

[14] This is a prospective complaint of what Petitioner may have believed was going to occur. However, nowhere in Petitioner's Petition does he in fact allege that Respondent actually kept the lights illuminated for 24 hours a day for an entire year. Since Petitioner fails to inform the Court of the length of time the lights were allegedly illuminated in his cell, the Court will not ascribe any length of time to the alleged illumination.

and behind [the inmate's] cell shone into his cell 24 hours a day, so that his cell was constantly illuminated, and [the inmate] had no way of telling night or day, . . . caus[ing] him *grave sleeping problems and other mental and psychological problems*." Id. at 1091 (emphasis added). Furthermore in Hoptowit, an Eighth Amendment violation was upheld based on the evidence that the lighting caused the inmate "eyestrain and fatigue and hindered attempts to insure that basic sanitation was maintained." Hoptowit, 753 F.2d at 783.

First, Petitioner has not shown that the lights being kept on 24 hours a day posed a sufficient risk to his health or safety. Unlike Hoptowit and Keenan noted above, Petitioner does not claim that the lighting has impacted his health at all. Petitioner does not show that the lights have caused him any "physical or psychological harm" whatsoever. Rather, Petitioner alleges that he "can't sleep," without offering any specifics as to the severity or frequency of his sleep deprivation.

Furthermore, there is no indication in the record as to what kind of lights were being shown into the Petitioner's cell, the brightness of those lights, whether those lights are dimmed at any time, or whether Petitioner is given any option (such as covering his eyes) to obtain darkness despite the lights. Thus, even if Petitioner had shown some harm, the record does not reflect enough information to substantiate such a claim. In light of the above, Petitioner's alleged deprivation is not "sufficiently serious." Farmer, 511 U.S. at 834. Second, Petitioner does not show that Respondent acted with deliberate indifference to the Petitioner's health or safety, mainly because the record does not show that the lighting conditions have actually caused Petitioner any health problems.

Finally, the record indicates that 24 hours a day illumination of Petitioner's cell served a valid penological purpose. Petitioner was cited for using bed linen as a curtain which obstructed visibility into his cell by prison officials. The illumination of

Petitioner's cell was designed to provide constant monitoring of Petitioner's cell during the day and nighttime hours.

### b.    120 Degree Temperature

Petitioner contends that the temperature within his cell reached over 120 degrees, presumably in part because the lights are kept on 24 hours a day. "The Eighth Amendment guarantees adequate heating." Keenan, 83 F.3d at 1091 [citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)]. Temperature is inadequate when it poses "a substantial risk of serious harm." Farmer, 511 U.S. at 834. "However, uncomfortable temperatures, without more, do not violate the Eighth Amendment." Gibson v. Wong, 2011 WL 3500994, at *4 (E.D. Cal. Aug. 8, 2011) (citing Keenan, 83 F.3d at 1091). Here, Petitioner alleges, without any support, that the temperature in his cell rose to 120 degrees. Yet, Petitioner does not offer any evidence of any adverse health effects, or even potential harm, resulting from the alleged heat. Though 120 degrees is admittedly uncomfortable, without more, there can be no Eighth Amendment violation. See Rhodes, 452 U.S. at 349 ["(T)he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort."]; Keenan, 83 F.3d at 1091 (finding summary judgment dismissing claim as proper because complaint suggests "only that the temperature was not comfortable.").

Thus, Petitioner has not shown that his alleged cruel and unusual punishment involved "wanton and unnecessary infliction of pain." See Rhodes, 452 U.S. at 347. Therefore, even if Petitioner had properly challenged the conditions of his confinement (in a Section 1983 action), he has not shown that the alleged violations of the Eighth Amendment pose a sufficient risk to his health, or have actually caused any harm.

### 5. Evidentiary Hearing

In the Opposition to the Motion to Dismiss, Petitioner argues that he is entitled to an evidentiary hearing "because the writ arises out of a state administrative rule

violation report." (Opposition at 2). Also, Petitioner alludes to "restoration of good time credits." (Opposition at 3-4).

As previously noted in this Report and Recommendation, the fact and length of Petitioner's confinement in prison remains unchanged regardless of whether the CDC 128-A at issue in this case is removed from Petitioner's file or remains in Petitioner's file. While Petitioner alludes to "restoration of good time credits," he does not allege that he lost good time credits, nor does it appear that Petitioner actually lost any good time credits as a result of the CDC 128-A at issue in this case.

Petitioner is entitled to an evidentiary hearing in this Court if: (1) his allegations, "if proved, would entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992); see also Ford v. Wainwright, 477 U.S. 399, 410 (1986)(plurality opinion); Townsend v. Sain, 372 U.S. 293, 312-13 (1963).

A federal court may be required to hold a hearing if, among other factors: (1) the fact finding procedure employed by the state was not adequate to afford a full and fair hearing; or (2) the petitioner did not receive a full, fair and adequate hearing; or (3) the state court record was not sufficient to support the state court findings. 28 U.S.C. § 2254(d)(2), (d)(6) & (d)(8); Ford v. Wainwright, 477 U.S. at 411.

Here, Petitioner is not entitled to an evidentiary hearing because his allegations do not entitle him to relief. Further the adjudication of Petitioner's CDC 128-A does not afford Petitioner *habeas corpus* relief. Moreover, the BPH's decision denying Petitioner parole reliably found, on the basis of all of the facts and evidence presented to it (including Petitioner's criminal history and numerous CDC 115's and 128-A's), that Petitioner was not suitable for parole. Moreover, Petitioner fails to show that the fact finding procedures employed by the prison, in adjudication of the CDC 128-A, and the BPH, in denying Petitioner parole, were not adequate and that the record presented to

this Court was insufficient to support the prison's and the BPH's findings. Accordingly, Petitioner's Request for an Evidentiary Hearing is DENIED.

## V.    CONCLUSION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that Respondent's Motion to Dismiss be GRANTED and the Petition for Writ of Habeas Corpus be DISMISSED with prejudice.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

**IT IS ORDERED** that no later than <u>September 19, 2013</u>, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>October 3, 2013</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


DATED:  August 28, 2013


Hon. William V. Gallo
U.S. Magistrate Judge

13CV592